IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT L. LEWIS,

                        Plaintiff,

        v.                                          Civil Action No.
                                                    9:11-CV-0867 (DNH/DEP)

CAROL WALLACE, *et al.,*

                        Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

ROBERT L. LEWIS, *pro se*
8 Baker Avenue, Apt. 4
Auburn, NY 13021

FOR DEFENDANTS:

Office of Frank W. Miller                    FRANK W. MILLER, ESQ.
6575 Kirkville Road
E. Syracuse, NY 13057

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Robert L. Lewis commenced this action against three Cayuga County Jail employees, pursuant to 42 U.S.C. § 1983, alleging the deprivation of his civil rights arising out of his detention at that facility. Plaintiff's complaint alleges that defendants were deliberately indifferent to his serious medical needs by failing to treat a tooth abscess over the course of eight months, during which time he experienced considerable pain and mental anguish. As relief, plaintiff seeks compensatory damages in the amount of $500,000.

Currently pending before the court in connection with this action is a motion by defendants for the entry of summary judgment dismissing plaintiff's complaint. In their motion, defendants argue that none of defendants were personally involved in the alleged deliberate indifference, that defendants provided plaintiff with constitutionally adequate treatment to the extent of their authority, and that none of defendants acted with the requisite deliberate indifference. For the reasons set forth below, I recommend that defendant's motion be granted.

## I. BACKGROUND[1]

Although plaintiff is no longer incarcerated, at the time this action

commenced plaintiff was detained at the Cayuga County Jail ("CCJ").

Compl. (Dkt. No. 1) at 2. Upon plaintiff's arrival at the CCJ in December

2010, defendant Jackie Wojeski, a registered nurse employed at the facility,

conducted a medical intake examination of plaintiff and prepared a medical

history report.[2] Wojeski Affd. (Dkt. No. 24, Attach. 5) at 1; Wallace Affd. (Dkt.

---

[1]    Although plaintiff has opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1(a)(3) Statement of Material Facts. By its terms, Local Rule 7.1 provides, in part, that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced a non-movant's failure to properly respond. *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Svc. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.). The deference owed to *pro se* litigants, however does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *Robinson v. Delgado*, No. 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.). Stated differently, "a *pro se* litigant is not relieved of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Latouche v. Tompkins*, No. 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, C.J.). Here, because plaintiff was warned of the consequences of failing to properly respond to defendants' Local Rule 7.1 Statement, Dkt. No. 26, Attach. 1, and he has failed to do so, I will construe defendants' facts contained in their Local Rule 7.1 Statement as true to the extent they are supported by accurate record citations. *See*, *e.g.*, *Latouche*, 2011 WL 1103045, at *1; *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). As to any facts not contained in defendants' Local Rule 7.1 Statement, in light of the procedural posture of this case, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[2]    Defendant Wojeski's affidavit states that this initial examination occurred in December 2012. Wojeski Affd. (Dkt. No. 24, Attach. 5) at 1. However, the exhibit to

No. 24, Attach. 4) at 7-9.  During that examination, plaintiff did not complain of any dental pain or toothaches, but did report that he had many cavities. Wojeski Affd. (Dkt. No. 24, Attach. 5) at 2; Wallace Affd. (Dkt. No. 24, Attach. 4) at 7.

In March 2011, plaintiff was examined by CCJ medical staff, complaining of swollen neck glands on his right side.  Wojeski Affd. (Dkt. No. 24, Attach. 5) at 2, 7; Wallace Affd. (Dkt. No. 24, Attach. 4) at 3, 11.  At that time, he was prescribed antibiotics for his symptoms and began taking them the same day.  Wojeski Affd. (Dkt. No. 24, Attach. 5) at 7; Wallace Affd. (Dkt. No. 24, Attach. 4) at 3, 11, 14.

On April 20, 2011, plaintiff presented to CCJ medical staff, complaining of a toothache.  Wallace Affd. (Dkt. No. 24, Attach. 4) at 3.  Defendant Wojeski notified Dr. Kooi, a physician at the facility, who diagnosed the plaintiff as suffering from a tooth abscess.  Wojeski Affd. (Dkt. No. 24, Attach. 5) at 7; Wallace Affd. (Dkt. No. 24, Attach. 4) at 3, 11.  As a result, plaintiff was prescribed another course of antibiotics, which he began taking the next morning.  Wallace Affd. (Dkt. No. 24, Attach. 4) at 15.

Although defendant Wallace states in her affidavit submitted in support

---

which she references indicates that it occurred in December 2010.  Wallace Affd. (Dkt. No. 24, Attach. 4) at 7-9.

4

of defendants' motion that "whenever an inmate presents with a tooth abscess, it is standard procedure to place him on the list to see a dentist," *id.* at 4, there is no record evidence that either defendant Wallace or Wojeski actually placed plaintiff on that list on April 20, 2011, when Dr. Kooi diagnosed the tooth abscess. Nurses at the CCJ are authorized to place an inmate on the dental list after a physician or physician's assistant determines that dental care is required. Wojeski Affd. (Dkt. No. 24, Attach. 5) at 4.

When plaintiff returned to the CCJ infirmary on May 10, 2011, and June 1, 2011, plaintiff again complained of the tooth abscess, and Dr. Kooi prescribed additional rounds of antibiotics. Wallace Affd. (Dkt. No. 24, Attach. 4) at 4, 11. On June 30, 2011, when CCJ medical personnel discovered two large cavities in plaintiff's mouth, they placed him on a list to be seen by a dentist and prescribed antibiotics. *Id.* at 11. Plaintiff was again prescribed on antibiotics on July 10, 2011, and Dr. Kooi informed CCJ medical staff that plaintiff was to remain on them until he saw a dentist. *Id.* at 12.

After plaintiff filed a grievance requesting emergency dental care on July 8, 2011, defendant John Gleason, a sergeant employed at the CCJ, responded by letter on July 15, 2011, informing plaintiff that he would receive

5

dental treatment the following week when a dentist was scheduled to visit the jail. Gleason Affd. (Dkt. No. 24, Attach. 6) at 1, 2, 5. On July 21, 2011, plaintiff received the anticipated treatment from an outside oral surgeon employed by a contracted vendor, American Mobil Dental ("AMD"). Wallace Affd. (Dkt. No. 24, Attach. 4) at 20; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 10. The dentist extracted two of plaintiff's teeth based on a finding that they were in "gross decay." *Id.*

Between March and "the end of June 2011, [the CCJ] went without a regular dental care provider for inmates." Wojeski Affd. (Dkt. No. 24, Attach. 5) at 2; *see also* Wallace Affd. (Dkt. No. 24, Attach. 4) at 4. By June 2011, Cayuga County had secured a contract with AMD, which brings a mobile dental exam room to the CCJ every few weeks; the record, however, is not clear as to precisely when this contract took effect. Wallace Affd. (Dkt. No. 24, Attach. 4) at 4-5; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 3. Before Cayuga County entered into this contract, inmates at the jail were transported to an outside dental office for dental care "when emergency circumstances arise or very serious medical issues are suspected." Wojeski Affd. (Dkt. No. 24, Attach. 5) at 4; *see also* Wallace Affd. (Dkt. No. 24, Attach. 4) at 4-5.

Common pain relievers, such as Orajel, Tylenol, and ibuprofen are

available to CCJ inmates at all times, on demand, without needing to be seen by medical personnel first.  Wallace Affd. (Dkt. No. 24, Attach. 4) at 4. According to defendants Wallace and Wojeski, their review of the relevant records reveals that plaintiff requested pain medication four times between December 2010 and September 2011.[3]  *Id.*; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 4; Wojeski Reply Affd. (Dkt. No. 28) at 4-7.

The record evidence reflects that defendant Wojeski examined plaintiff directly on four occasions, in December 2010, and in April, May, and June 2011.  Wojeski Affd. (Dkt. No. 24, Attach. 5) at 1; Wallace Affd. (Dkt. No. 24, Attach. 4) at 3, 4, 5.  Although the record also suggests that defendant Wallace treated plaintiff directly, the dates on which she examined him are not specified.  *See* Wallace Affd. (Dkt. No. 24, Attach. 4) at 5 ("At no time did I deny dental attention or dental care to Mr. Lewis.  I observed no need for immediate dental attention[.]").

---

[3]    In connection with defendants' pending motion, plaintiff filed a surreply, in which he submitted his personal daily log purporting to show the occasions on which he requested over-the-counter pain medication from CCJ personnel.  Plf.'s Surreply (Dkt. No. 30) at 9.  As will be discussed more completely below, the court has not considered this surreply or its exhibits in determining defendants' motion.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 25, 2011.  Compl. (Dkt. No. 1.)
Plaintiff's complaint names as defendants Carol Wallace, a registered nurse
employed at the CCJ; Jackie Wojeski, also a registered nurse at the facility;
and John Gleason, a sergeant employed by the Cayuga County Sheriffs'
Department, Corrections Division.  *Id.* at 1-2; Wallace, Wojeski, Gleason
Affds. (Dkt. No. 24, Attachs. 4, 5, 6).  Plaintiff's complaint asserts a claim of
deliberate medical indifference to plaintiff's serious medical needs in violation
of his Eighth Amendment rights.  Following completion of discovery, including
service on plaintiff of his medical and jail records, defendants moved for
summary judgment dismissing plaintiff's complaint in its entirety.  *See
generally* Dkt. No. 24.  In their motion, defendants argue that none of them
were personally involved in any alleged deliberate indifference to plaintiff's
serious medical needs, and that, in any event, the record does not reflect that
any of defendants acted with a "sufficiently culpable state of mind" in treating
plaintiff.  Defs.' Memo. of Law (Dkt. No. 24, Attach. 2) at 5-10.  Plaintiff
responded to defendants' motion, Plf.'s Resp. (Dkt. No. 27), defendants
submitted a reply, Defs.' Reply (Dkt. No. 28, Attach. 1), and then plaintiff
submitted a surreply not permitted under the local rules of this court, Plf.'s

8

Surreply (Dkt. No. 30).  Defendants' motion is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

9

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's Surreply

Plaintiff submitted a surreply in response to defendants' reply in further support of their motion. *See generally* Plf.'s Surreply (Dkt. No. 30). By letter motion, defendants have moved to strike this submission by plaintiff, arguing that it violates the local rules of this court. Dkt. No. 31.

Local Rule 7.1 of the Northern District of New York succinctly states that "a surreply is not permitted." N.D.N.Y. L.R. 7.1(b)(1). "This rule is not a mere technicality, but a well-reasoned procedure premised, in part, on the fact that it is the movant who is shouldered with the ultimate burden on the motion and who therefore should be (for reasons of judicial efficiency and simple fairness) afforded the last word on the motion." *Medina v. Hunt*, No. 05-CV-1460, 2008 WL 4426748, at *16 n.95 (N.D.N.Y. Sept. 25, 2008) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.). Here, for reasons of judicial efficiency and fairness, and because plaintiff failed to first seek permission from the court to submit his surreply, the court will not consider this submission, and orders it stricken from the record.[4]

_____

[4]    Having had the opportunity to review the contents of plaintiff's surreply in the context of this case, the court notes that the evidence plaintiff seeks to admit through this submission could have readily been included in his response. Specifically, plaintiff argued in his response that there was no record evidence to support defendants' assertion that he requested over-the-counter pain medication on only four occasions. Plf.'s Resp. (Dkt. No. 27) at 5. The fact that plaintiff's response acknowledged defendants' assertion leads the

C.    Personal Involvement

In their motion, defendants seek dismissal of plaintiff's claims against them based upon the lack of personal involvement in the constitutional violations alleged.  Defs.' Memo. of Law (Dkt. No. 24, Attach. 2) at 5-9. Liberally construed, plaintiff argues in response that, defendants were personally involved because they treated plaintiff directly.  Plf.'s Resp. (Dkt. No. 27) at 4.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

---

court to believe that he had ample opportunity to submit his log, which purports to accurately depict the occasions on which he requested over-the-counter pain medication from CCJ personnel.  Additionally, the court notes that this argument by plaintiff does not, in fact, dispute the accuracy of defendants' assertion that plaintiff made a request only four times.

1.    Defendants Wallace and Wojeski

Liberally construed, plaintiff's complaint alleges that defendants

Wallace and Wojeski are liable for deliberate indifference to his serious

medical needs for only two reasons.  First, they intentionally failed to arrange

for plaintiff to see a dentist, and second, they intentionally neglected to

provide plaintiff with adequate pain medication.  Compl. (Dkt. No. 1) at 4, 10.

As it relates to the first allegation, the record is equivocal as to the authority

of defendants Wallace and Wojeski to place an inmate on a list and be seen

by an outside dentist.  At one point, the record demonstrates that defendants

Wallace and Wojeski are authorized to place inmates on the dental list, which

indicates that an inmate needs to be seen by a dentist, only after a physician

or physician's assistant determines that an inmate's condition requires

treatment by a dentist.  *See* Wojeski Affd. (Dkt. No. 24, Attach. 5) at 4 ("[T]he

most a nurse can do is place an inmate on the list to see the dentist when a

physician or physician's assistant determines that dental care is required.").

Yet, in her affidavit, defendant Wallace acknowledges that, based on

plaintiff's diagnosis of a tooth abscess on April, 20, 2011, either she or

defendant Wojeski would have placed plaintiff on such a list, adding that

"[w]henever an inmate presents with a tooth abscess, it is standard

procedure to place him on the list to see a dentist." Wallace Affd. (Dkt. No. 24, Attach. 4) at 4. In light of this conflict, and because there is record evidence that both defendants Wallace and Wojeski treated plaintiff directly, I find that a reasonable factfinder could conclude that these defendants were under an obligation to place plaintiff on the dental list, and were therefore personally involved in plaintiff's allegations that they failed to arrange dental care on behalf of plaintiff. *See Gillard v. Rosati*, No. 08-CV-1104, 2011 WL 4402131, at *8 (N.D.N.Y. Aug. 22, 2011) (Peebles, M.J.), *adopted by* 2011 WL 4344061 (N.D.N.Y. Sept. 14, 2011) (Kahn, J.) (finding personal involvement in a deliberate medical indifference claim where the defendant-nurse examined plaintiff on two separate occasions); *Price v. Reilly*, 697 F. Supp. 2d 344, 366 (E.D.N.Y. 2010) (finding personal involvement where there was record evidence that the defendant-nurse had an obligation to test the plaintiff to see if he qualified to be placed on the kidney-transplant list and the defendant-nurse failed to do so).

As it relates to the second allegation, the undisputed record evidence demonstrates that plaintiff could obtain over-the-counter pain medication "on demand" from any CCJ personnel. Wojeski Affd. (Dkt. No. 24, Attach. 5) at 3; Wallace Affd. (Dkt. No. 24, Attach. 4) at 4. Additionally, there is no record

evidence that defendants Wallace and Wojeski are authorized to prescribe medication, or that plaintiff requested any pain medication from them. As a result, I find that no reasonable factfinder could conclude that defendants Wallace and Wojeski were personally involved in plaintiff's allegation that they intentionally withheld pain medication from him.

2.     Defendant Gleason

Plaintiff's complaint alleges that defendant Gleason is liable for deliberate medical indifference because he did not authorize "emergency dental care" for plaintiff. Compl. (Dkt. No. 24, Attach. 4) at 10. As a supervisor at the CCJ, defendant Gleason may be found personally involved in an alleged constitutional violation pursuant to section 1983 only in a narrow set of circumstances. More specifically, a supervisor may be held responsible for a civil rights violation when it is established that he (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53

(2d Cir. 2007), *rev'd on other grounds sub nom.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  It is well established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor because there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Although it is not enough to establish supervisor liability simply by alleging that a supervisor failed to respond to a grievance,[5] courts in this circuit have held that personal involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's grievance.  *See, e.g.*, *Cole v. N.Y.S. Dep't of Corrs. Svcs.*, 2012 WL 4491825, at *22 (N.D.N.Y. Aug. 31, 2012) (finding that the supervisor-defendant's memoranda responding to the plaintiff's complaints were sufficient to establish that defendant's personal involvement); *Bourgoin v. Weir*, No. 10-CV-0391, 2011 WL 4435695, at *5 (D. Conn. Sept. 23, 2011) ("A supervisor's response to a prisoner's grievance or complaint that attempt[s] to defend or explain alleged constitutional violations is sufficient to establish the personal involvement of that

---

[5]    *See*, e.g., *Parks v. Smith*, No. 08-CV-0586, 2011 WL 4055415, at *14 (N.D.N.Y. Mar. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4055414 (N.D.N.Y. Sept. 12, 2011) (McAvoy, J.) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement.").

supervisor.").

Here, whether defendant Gleason was personally involved in plaintiff's allegation that he failed to authorize emergency dental care turns on whether defendant Gleason knew of, and failed to remedy, the alleged inadequate care, and, additionally, whether he retained the authority to grant the relief sought. Although the record evidence reveals a dispute of fact as to when defendant Gleason first learned from plaintiff that he was allegedly receiving inadequate medical treatment, it is undisputed that defendant Gleason responded to a grievance from plaintiff on July 15, 2011. Gleason Affd. (Dkt. No. 24, Attach. 6) at 5-6; Compl. (Dkt. No. 1) at 7-8. This alone is sufficient to establish defendant Gleason's personal involvement. *Cole*, 2012 WL 4491825, at *22; *Bourgoin*, 2011 WL 4435695, at *5.

D.    <u>Deliberate Medical Indifference</u>[6]

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."

---

[6]    Although defendants' L.R. 7.1 Statement states that plaintiff was detained at the CCJ as a pre-trial detainee, it is not properly supported by an accurate record citation in accordance with Local Rule 7.1(a)(3).  Defs.' L.R. 7.1 Statement (Dkt. No. 24, Attach. 1) at ¶ 1.  For this reason, the court has analyzed plaintiff's deliberate indifference claim under the Eighth Amendment, rather than the Fourteenth.  *See Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003) (finding that, as a pretrial detainee, the plaintiff's conditions of confinement were subject to safeguards emanating from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which governs such claims brought by inmates serving prison sentences).  In any event, however, whether plaintiff in this case was a pretrial detainee or incarcerated as a result of a conviction is not outcome determinative because the legal standard governing his deliberate indifference claim is identical in either event.  *See Calozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

*Estelle,* 429 U.S. at 103.  Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering no one suggests would serve any penological purpose."  *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements.  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).

1.    Objective Requirement

To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries.  The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care . . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the

seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations marks omitted)

Here, defendants do not specifically address the objective prong of a medical deliberate indifference claim in their motion for summary judgment.

*See generally* Defs.' Memo. of Law (Dkt. No. 24, Attach. 2).  However, for the sake of completeness, the court briefly addresses this prong of the deliberate indifference analysis below.

Under the circumstances of this case, plaintiff's deliberate indifference claim turns on whether the delay in dental treatment amounts to sufficiently serious inadequate medical care under the law.  Although the court is permitted to consider plaintiff's underlying condition, under these circumstances, where plaintiff was receiving ongoing treatment for his tooth abscess, the focus of the inquiry is "on the challenged delay."  *Salahuddin*, 467 F.3d at 280.

a.    Defendants Wallace and Wojeski

As it relates specifically to defendants Wallace and Wojeski, because the undisputed record indicates that their only responsibilities to plaintiff were to administer prescribed medications and place him on the dental list after a physician or physician's assistant determined that dental care was necessary, I am required to focus on whether the alleged failure to fulfill their responsibilities constitute sufficiently serious inadequate medical care. Because there is no definitive evidence in the record indicating when a physician or physician's assistant made a determination that plaintiff's

condition required a dentist, I am precluded from finding that there is no dispute of material fact as to whether defendants Wallace and Wojeski fulfilled their responsibilities in placing plaintiff's name on the list as soon as they were required. Instead, plaintiff's CCJ medical records submitted by defendants in support of their motion demonstrate that plaintiff was diagnosed with a tooth abscess on April 20, 2011, but he was not placed on the dental list until June 30, 2011. Wallace Affd. (Dkt. No. 24, Attach. 4) at 11-12; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 7-8. Importantly, defendant Wallace stated in her affidavit that, "[w]henever an inmate presents with a tooth abscess, it is standard procedure to place him on the list to see a dentist." Wallace Affd. (Dkt. No. 24, Attach. 4) at 4. Without more, a reasonable factfinder could conclude that Dr. Kooi, by way of diagnosing the tooth abscess and placing plaintiff on antibiotics on April 20, 2011, determined that plaintiff needed to see a dentist on that date. In that instance, defendants Wallace and Wojeski would have been obligated to place plaintiff on the dental list on that date, rather than wait until June 30, 2011. Whether their failure to place plaintiff on the list earlier amounts to sufficiently serious inadequate medical care in violation of the Eighth Amendment is an issue of fact for the jury at trial.

In addition, although defendants attempt to circumvent these conclusions by stating that Cayuga County had not yet secured a contract with AMD by April 20, 2011, this does not necessarily alleviate the duty of defendants Wallace and Wojeski to place plaintiff on a dental list if Dr. Kooi determined that he needed to be seen by a dentist on that date.[7]  This is especially true if a dentist was available to inmates at CCJ prior to when the contract with AMD went to into effect.[8]  If a factfinder concludes that these defendants were obligated to place plaintiff on the dental list earlier than June 30, 2011, and that a dentist was available, a reasonable factfinder could also conclude that these defendants' failures to fulfill that obligation resulted in a three-month delay in treatment for his tooth abscess, which, by all accounts, resulted in the extraction of two of plaintiff's teeth due to "gross decay." Accordingly, I find that, based on the record now before the court, a

---

[7]  In a broader sense, the fact that prison officials have not made arrangements to provide adequate medical care does not shield them from liability under the Eighth Amendment.

[8]  Defendants' evidence on this point is not convincing.  Although defendant Wojeski avers in her affidavit that "[f]rom March 2011 through the end of June 2011, [CCJ] went without a regular dental care provider for inmates," this does not unequivocally establish that *no* dentist was available to CCJ inmates during that time.  Wojeski Affd. (Dkt. No. 24, Attach. 5) at 2-3.  Without more, a reasonable factfinder may conclude that, although a "regular dental care" provider was not available, one was available for emergencies.  Indeed, defendant Wojeski explains in her affidavit that an inmate could be "transported away from [CCJ] for unscheduled care when emergency circumstances arise or very serious issues are suspected."  *Id.* at 4.

reasonable factfinder could conclude that defendants Wallace and Wojeski's alleged failure to place plaintiff on the dental list in a timely manner constitutes sufficiently serious inadequate medical care. *See Price*, 697 F. Supp. 2d at 366 (finding that the reasonableness of the medical personnel-defendants' efforts to treat the plaintiff "is a factual question inappropriate for resolution on summary judgment").

b.   Defendant Gleason

As it relates to defendant Gleason, because he is not medical personnel, he may only be liable for deliberate medical indifference only in very limited circumstances. Indeed, "[n]on-medical personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel." *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (Scullin, J.), *accord*, *DeBlasio v. Rock*, No. 09-CV-1077, 2011 WL 4478515, at *11 (N.D.N.Y. Sept. 26, 2011) (McAvoy, J.).

Here, there is no record evidence that, by his alleged failure to authorize emergency care for plaintiff, defendant Gleason intentionally delayed plaintiff medical care. Instead, the record is replete with examples to

the contrary.  Initially, it is undisputed that defendant Gleason had no authority to determine when plaintiff received emergency care because that determination is uniquely in the province of CCJ's medical personnel. Gleason Affd. (Dkt. No. 24, Attach. 6) at 3.  In any event, even assuming that defendants' argument that defendant Gleason's responsibilities included insuring that plaintiff received dental care within a reasonable time after Cayuga County contracted with AMD is true, Defs.' Memo. of Law (Dkt. No. 24, Attach. 2) at 8, plaintiff does not allege that defendant Gleason neglected to fulfill this duty.  Instead, the record is unequivocal that a dentist from AMD treated plaintiff shortly after Cayuga County contracted with them to provide dental services to CCJ inmates.  In addition, the evidence shows that defendant Gleason timely responded to plaintiff's grievance dated July 8, 2011, and acknowledged that CCJ was making efforts to address plaintiff's complaints.  Compl. (Dkt. No. 1) at 7-8; Gleason Affd. (Dkt. No. 24, Attach. 6) at 5-6.  Finally, defendant Gleason states in his affidavit, and plaintiff does not dispute, that, upon making inquiries to medical personnel regarding plaintiff's condition, he received information that plaintiff "was being provided adequate and substantial medical care and treatment by [CCJ] medical staff." Gleason Affd. (Dkt. No. 24, Attach. 6) at 2.  The cumulation of all this

evidence leads me to conclude that no reasonable factfinder could find that defendant Gleason's conduct in this case amounts to an intentional delay to provide plaintiff with medical treatment. For this reason alone, and without addressing the subjective requirement of the deliberate medical indifference analysis as it relates to that Gleason, I recommend that plaintiff's Eighth Amendment claim against defendant Gleason be dismissed. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that prison guards may be held liable for deliberate medical indifference when they "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed.").

2. Subjective Requirement

The second requirement for an Eighth Amendment violation is subjective. To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in

a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer,* 511 U.S. at 837); *see also Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40).

Here, because of the limited responsibilities defendants Wallace and Wojeski had in caring for plaintiff as it relates to his tooth abscess, the dispositive inquiry is whether their alleged failure to place plaintiff on the dental list in April 2011, when the tooth abscess was first diagnosed, constitutes deliberate indifference. After carefully considering all of the record evidence, I find that no reasonable factfinder could conclude that these defendants knew of, and disregarded, a substantial risk to plaintiff. Defendants Wallace and Wojeski state in their affidavits, and plaintiff does not dispute, that a tooth abscess cannot be operated on or removed until the abscess subsides. Wallace Affd. (Dkt. No. 24, Attach. 4) at 3; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 2. This evidence establishes that defendants

Wallace and Wojeski believed that the medical care plaintiff received, including the failure to place plaintiff on a list to be seen by a dentist, did not create a substantial risk to plaintiff. In addition, both defendants Wallace and Wojeski stated that plaintiff's condition never presented as an emergency or need for immediate medical attention. Wallace Affd. (Dkt. No. 24, Attach. 4) at 4; Wojeski Affd. (Dkt. No. 24, Attach. 5) at 4. The record also establishes that plaintiff requested over-the-counter pain medication on only four occasions between December 2010 and September 2011, which, at least, diminishes plaintiff's allegations that he suffered from severe pain. *Id.* Considered together, I find that no reasonable factfinder would conclude, based on this evidence, that defendants Wallace and Wojeski acted with deliberate indifference by allegedly failing to place plaintiff on the dental list earlier than June 30, 2011. *See Tutora v. Correctional Medical Care, Inc.,* No. 10-CV-0207, 2012 WL 1898871, *8 (N.D.N.Y. April 30, 2012) (Dancks, M.J.) (finding that the defendant-nurse did not consciously disregard a substantial risk of serious harm to the plaintiff where the defendant-nurse examined the plaintiff, explained facility procedures to him, referred him to supervisors, and plaintiff received adequate medication from other medical personnel).

IV.    SUMMARY AND CONCLUSION

Defendants have moved for the entry of summary judgment based on the only cause of action asserted in plaintiff's complaint, deliberate medical indifference.  Although I find that a reasonable factfinder could conclude, based on the record evidence, that each of the defendants was personally involved in the allegations giving rise to plaintiff's claim, I find that defendants' motion may be granted on other grounds.  First, I find that no reasonable factfinder could conclude that defendant Gleason's alleged failure to authorize emergency dental care for plaintiff amounted to sufficiently serious inadequate medical care because there is no record evidence to support a finding that he intentionally delayed plaintiff's treatment.  Second, I find that no reasonable factfinder could conclude that defendants Wallace and Wojeski acted with the necessary deliberate indifference to plaintiff's medical needs.

Based on the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with

the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is also hereby

ORDERED that plaintiff's surreply (Dkt. No. 30) be stricken from the

record; and it is further respectfully

ORDERED that the clerk of the court serve a copy of this report and

recommendation upon the parties in accordance with this court's local rules.

Dated:      February 22, 2013
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge